NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CALVIN URETSKY,<br><br>         Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>         Defendant. | Case No. 20cv16086 (EP) (MAH)<br><br>**OPINION** |

**PADIN, District Judge.**

This matter comes before the Court upon Defendant United States of America's ("U.S.") motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Court decides the matter on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b). For the reasons set forth below, the Court converts Defendant's motion to dismiss into a motion for summary judgment, which is GRANTED.

**I. BACKGROUND**

On November 6, 2020, *pro se* Plaintiff Calvin Uretsky, a veteran, filed this medical malpractice action against the U.S. pursuant to the Federal Tort Claims Act ("FTCA") for podiatric treatment he received at Veterans Affairs ("VA") hospitals from VA doctors/employees between May and August 2016. D.E. 1 "Compl." ¶¶ 9-10. Plaintiff alleges that on four occasions, VA doctors/employees deviated from the standard of care: Count I alleges that, on May or about May 5, 2016, VA doctors, Drs. Troyer, Seedhom, and/or Samaan made seven injections into scar tissue on Plaintiff's left calf; Count II alleges that, on or about May 9, 2016, VA doctors, Drs. Troyer, Samaan, and Green bandaged Plaintiff's left foot in a way that worsened his wound, which caused

an infection and loss of function in three of his left toes; Count III alleges that, on or about August 23, 2016, VA doctor, Dr. Jamil used an ungloved hand to test pressure Plaintiff's feet, which caused an infection to Plaintiff's right foot and created a new wound; and Count IV alleges that, on or about August 26, 2016, Ms. Schoch improperly utilized a scalpel and cut Plaintiff's right foot.  Compl. ¶¶ 15-40.

On July 2, 2021, Defendant answered Plaintiff's complaint and demanded an affidavit of merit pursuant to N.J.S.A. 2A:53A-27 from Plaintiff.  D.E. 7.  Defendant moved to dismiss, contending that Plaintiff's failure to provide an affidavit of merit justifies dismissal.  On August 24, 2022, the Court gave notice to the parties that it was converting the instant motion into a motion for summary judgment and gave the parties an opportunity to submit a supplemental brief or affidavit in support or opposition within 30 days of that notice.  D.E. 25.  Neither party acted on that opportunity.  *Id.*

## II.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted).

The Third Circuit has interpreted New Jersey's Affidavit of Merit ("AOM") statute, N.J.S.A. 2A:53A-27, as having:

> no effect on what is included in the pleadings of a case or the specificity thereof. The required affidavit is not a pleading, is not filed until after the pleadings are closed, and does not contain a statement of the factual basis for the claim. Its purpose is not to give notice of the plaintiff's claim, but rather to assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings.

*Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000).  Consequently, where a plaintiff has failed to adhere to New Jersey's AOM statute, a moving defendant should not file a Rule 12(b)(6) motion, but, instead, should file a motion for summary judgment under Fed. R. Civ. P. 56.  In *Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 303 n.13 (3d Cir. 2012), the Third Circuit explained:

> Though the AOM Statute directs courts to dismiss actions in which a timely affidavit has not been filed for "failure to state a claim," because the affidavit is not a pleading requirement, this language merely provides that the consequences of not filing a timely affidavit are the same as failing to state a claim. Indeed, because the affidavit is not part of the pleadings, dismissing an action based on the lack of an affidavit necessarily seems to involve matters outside the pleadings, which would require a court to consider a motion to dismiss for failure to state a claim as a motion for summary judgment, as provided by Rule 12(d).

Fed. R. Civ. P. 12(d) provides that "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  *See Frontier Dev. LLC v. Craig Test Boring Co.*, 2017 WL 4082676, at *3 (D.N.J. Sept. 15, 2017) (converting a motion to dismiss based on failure to file an affidavit of merit into a motion for summary judgment); *see also Estate of Lewis v. Cumberland Cty.*, 2018 WL 1317853, at *3 (D.N.J. Mar. 14, 2018) (emphasizing that under *Nuveen*, failure to file an AOM is a basis for review under a motion for summary judgment).  Accordingly, the Court will convert Defendant's motion to dismiss into a motion for summary judgment.

Fed. R. Civ. P. 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A court deciding a motion for summary judgment is required to construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. Cnty. of Allegheny*

3

*Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party must bear the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof [...] the burden on the moving party may be discharged by 'showing' [] that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Where a moving party has satisfied this *prima facie* burden, the non-moving party must provide actual evidence that creates a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).  But, if the non-moving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, [] there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Katz v. Aetna Cas. & Sur. Co*., 972 F.2d 53, 55 (3d Cir. 1992) (citations and quotation marks omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be *no genuine issue of material fact*."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).

### III. ANALYSIS

Defendant moves for dismissal of Plaintiff's claims for failure to state a claim pursuant to Rule 12(b)(6).  But, based on the Third Circuit's guidance that Plaintiff's failure to comply with New Jersey's AOM statute is appropriate for review as a motion for summary judgment, *supra* Section II., the Court will treat Defendant's motion as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d); *Nuveen*, 692 F.3d at 303 n.13.  Defendant argues that Plaintiff failed to serve an

AOM pursuant to N.J.S.A. 2A:53A-27.  Plaintiff does not argue that he has served a statutorily compliant AOM, but rather that he has provided functionally equivalent documents.  Summary judgment in favor of Defendant is appropriate because it is clear at this juncture that Plaintiff will never be able to serve a statutorily compliant AOM.

**A.      Plaintiff Has Not Served a Timely Affidavit of Merit**

Where a plaintiff alleges malpractice, New Jersey requires an affidavit of merit ("AOM"). N.J.S.A. 2A:53A-26 to 29; *Chamberlain*, 210 F.3d at 161 (requiring application of the New Jersey AOM statute to a medical malpractice claim that accrues in New Jersey and is brought in federal court).  Specifically, the AOM statute provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, [for a total of 120 days] to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A-27.

Plaintiff has not filed a timely AOM.  Where a plaintiff does not file an AOM within the 120-day filing period and a defendant files a motion to dismiss, the parties should expect that a court will dismiss the complaint with prejudice for failure to state a claim.  *See Ferreira v. Rancocas Orthopedic Assocs.*, 178 N.J. 144, 836 A.2d 779, 785 (N.J. 2003); *see also Familia v.*

*University Hosp. of University of Medicine and Dentistry of New Jersey*, 350 N.J. Super. 563 (App. Div. 2002); N.J.S.A. 2A:53A-29.[1]

Plaintiff filed his complaint on November 6, 2020. D.E. 1. Defendant answered the complaint on July 2, 2021, which triggered the 60-day clock for Plaintiff to serve an AOM on Defendant. D.E. 7; *see also* N.J.S.A. 2A:53A-27. Plaintiff did not serve an AOM within the initial 60-day period, ending on August 31, 2021; Defendant granted Plaintiff an additional 30 days to serve an AOM. *See* D.E. 12. At the end of the additional 30-day period, ending on September 30, 2021, Plaintiff served what he called a "personal" AOM, written and signed by himself. *See* D.E. 19-2, Ex. A. Defendant consented to the Court granting Plaintiff an additional 60 days to serve an AOM. *See* D.E. 13. Plaintiff still did not serve a statutorily compliant AOM by November 29, 2021. *See* D.E. 15.

On December 2, 2021, Defendant filed a letter requesting that the Court dismiss Plaintiff's claim for failure to procure an AOM. *Id.* Plaintiff responded that his failure to procure an AOM was due to the VA's refusal to produce all his medical records, but did produce a Board of Veterans' Appeals order ("BVA Order"), signed by an attorney, finding that Plaintiff was entitled to disability payments due to an August 26, 2016, procedure on his right foot, which involved "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the VA." *See* D.E. 16.[2]

On December 15, 2021, the Court informed Plaintiff that he could only proceed without an AOM by either requesting that the Court consider an alternative document in lieu of an AOM, or

---

[1] In federal court, a motion for summary judgment is the appropriate vehicle. *See Nuveen*, 692 F.3d at 303, n.13; *see also Estate of Allen v. Cumberland County*, 262 F. Supp. 3d 112 (D.N.J. 2017) (granting summary judgment for the defendant where the plaintiff did not serve an AOM).

[2] Dr. Cohen's letter dated January 4, 2022 states that he had "full access to and [has] reviewed [Plaintiff's] complete VA medical record as well as his active-duty service medical record[,]" which would appear to contradict any assertion made by Plaintiff that Veterans Affairs did not provide Plaintiff with all of his medical records. *See* D.E. 19-2, Ex. B.

by asking the VA for the necessary medical records and that if those records were not produced within 45 days, then Plaintiff could request that the Court waive the AOM requirement under N.J.S.A. 2A:53A-28.  D.E. 17.  On December 31, 2021, Plaintiff provided Defendant with a list of documents that he requested from the VA; those documents were produced to Plaintiff within 45 days—with the last of the documents produced on February 7, 2022.  D.E. 19 "Mot." at 3.  On January 6, 2022, instead of serving a compliant AOM, Plaintiff served an unsworn statement from a dermatologist, Dr. Phillip Cohen.  *See* D.E. 19-2, Ex. B.

Despite the numerous extensions granted by the Court and Defendant and the 120-day filing period having long passed, Plaintiff has yet to provide a compliant AOM.  Instead, Plaintiff has provided three noncompliant documents—Plaintiff's "personal" AOM, the BVA Order, and a dermatologist's unsworn statement.  Consequently, Plaintiff has not timely filed an AOM, as required by the New Jersey Statute.  *See* N.J.S.A. 2A:53A-27.  Any AOM, compliant or not, that Plaintiff were to file at this time would be even more untimely than what he has already provided.

**B.    Plaintiff's Alternative Documents Do Not Satisfy the Requirements of the New Jersey AOM Statute for Medical Malpractice**

The New Jersey AOM statute provides additional parameters for what an AOM must include in an action alleging medical malpractice:

> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L.2004, c. 17 (C.2A:53A-41). In all other cases, the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years.

N.J.S.A. 2A:53A-27.

Because this is a medical malpractice action, Plaintiff was required to, and has not provided, an AOM satisfying the additional parameters outlined in N.J.S.A. 2A:53A-41. Plaintiff provided three noncompliant documents in an attempt to satisfy the AOM requirement. First, Plaintiff provided a "personal" AOM, which on its face cannot satisfy the AOM requirement for several reasons. First, the statute requires that the affiant be an "appropriate licensed person," N.J.S.A. 2A:53A-27, which would be a podiatrist here, because the treatment involved Plaintiff's feet, and Plaintiff is not a podiatrist. Second, the statute prevents the affiant from being someone with a "financial interest in the outcome of the case," N.J.S.A. 2A:53A-27, which excludes Plaintiff because he is a party to the case. *See Ferreira*, 178 N.J. at 144. Third, N.J.S.A. 2A:53A-41 requires that the affiant be a recognized specialist or subspecialist and that the care or treatment at issue involve that particular specialty or subspecialty, which Plaintiff is not.

Second, Plaintiff provided the BVA Order, which does not satisfy the AOM requirement for two reasons: first, the BVA Order was not signed by an "appropriate licensed person," N.J.S.A. 2A:53A-27, but was instead signed by an attorney; and second, that attorney is not a recognized specialist or subspecialist as required by N.J.S.A. 2A:53A-41. Lastly, Plaintiff provided an unsworn statement by a dermatologist, Dr. Cohen, which also does not satisfy the AOM requirement for two reasons: first, Dr. Cohen provided an unsworn statement, rather than an affidavit as required by the statute, N.J.S.A. 2A:53A-27; and second, Dr. Cohen is a dermatologist, which is not the type of specialist or subspecialist required by N.J.S.A. 2A:53A-41 because the care at issue here involves podiatry. *See* D.E. 19-2, Ex. B; *see also* D.E. 1.

Plaintiff has not served Defendant with a single document compliant with the New Jersey AOM statute. The three documents Plaintiff has provided are insufficient for the reasons described in the preceding paragraphs.

## C. Plaintiff's Noncompliance with the New Jersey AOM Statute is Not Excused by Any Exceptions

The Third Circuit recognizes four limited exceptions for a plaintiff's noncompliance with the AOM requirement: "(i) a statutory exception regarding lack of information; (ii) a 'common knowledge' exception; (iii) substantial compliance with the affidavit-of-merit requirement;" and "(iv) 'extraordinary circumstances' that warrant equitable relief." *Nuveen*, 692 F.3d at 305; *see also* N.J.S.A. 2A:53A-28. Defendant contends, and the Court agrees, that none of these exceptions apply here.

*1.    The Statutory Exception Regarding Lack of Information Does Not Apply*

Plaintiff does not satisfy the statutory exception regarding lack of information, which only applies where a plaintiff has properly requested, from a defendant, materials having a substantial bearing on the preparation of an AOM. N.J.S.A. 2A:53A-28. Plaintiff received all the medical records that he requested from the VA in December 2021 and has not argued that his request was not fulfilled in a timely manner.

Attached to Plaintiff's opposition was an order from the Court of Appeals for Veterans Claims ("CAVC"), which states that ten letters were filed by counsel for the VA Secretary providing an update as to the progress made in that tribunal. *See* D.E. 20-1. As Defendant points out, the relevancy of the order to this Court is confusing because Plaintiff has already requested and received medical records from the VA and has not suggested to the Court that he has requested additional documents. *See* Reply at 1-2. Plaintiff baldly claims that the CAVC Order "provides a succinct summary of the 10 delays that the VA has made at the CAVC in providing the documents." Opp'n at 2; D.E. 20-1. At most, the CAVC Order expresses that tribunal's frustration with the pace of progress made toward a resolution in that proceeding, but that appears to have no relevancy to this proceeding. *See* D.E. 20-1.

*2. The Common Knowledge Exception Does Not Apply*

Plaintiff does not satisfy the common knowledge exception, which applies where "jurors['] common knowledge as laypersons is sufficient to enable them, using ordinary understanding and experience, to determine defendants' negligence without the benefit of specialized knowledge of experts." *Frontier Dev. LLC*, 2017 WL 4082676, at *16; *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 579-80 (3d Cir. 2003) (noting that the common knowledge exception only applies where "[n]o special expertise or expert testimony is needed to show, at the outset of a case, that the claim is not frivolous"). Plaintiff argues that the common knowledge exception applies to Counts I, III, and IV, stating that "[i]t is common sense that medical providers should wear gloves, not inject patients in scar tissue, and not cut nerves with scalpels. No Affidavit of Merit is needed for these issues – the jury/Judge can understand these errors with their own common knowledge and render a proper decision." Opp'n at 2. Defendant responds that the common knowledge exception does not apply because Plaintiff's claims raise questions as to the "procedures, protocols, and duties" of licensed professionals, citing to a New Jersey case where the court concluded that an AOM was necessary to establish whether a licensed nurse deviated from the standard of care when a patient removed a tube and refused replacement. Reply at 2 (citing *Cowley v. Virtua Health System*, 242 N.J. 1, 9 (N.J. 2020)).

The common knowledge exception is narrow, applying only to situations where negligence is "readily apparent to anyone of average intelligence and ordinary experience[,]" *Kelly v. Berlin*, 300 N.J. Super. 256, 266 (App. Div. 1997) (citations and quotation marks omitted), and not to "technical matters peculiarly within the knowledge of medical" professionals. *Lee v. Park*, 2013 WL 5770680, at *4 (D.N.J. Oct. 23, 2013) (citations and quotation marks omitted). An AOM is necessary to determine whether the damages Plaintiff alleges in Counts I, III, and IV were caused

10

by a deviation from the standard of care required by podiatrists providing treatment before, during, and after the surgical debridement of heel ulcers because this type of procedure falls squarely into the ambit of knowledge of medical professionals—not laypersons.

Plaintiff's claims differ from the types of claims that courts have found fall into the common knowledge exception. For example, in *Hubbard v. Reed*, 168 N.J. 387, 394, 396-97 (N.J. 2001) (citations omitted), the court held that the common knowledge exception applied where the wrong tooth was pulled because it "has long been settled that pulling the wrong tooth is negligent as a matter of common knowledge." In *Bender v. Walgreen Eastern Co., Inc.*, 399 N.J. Super. 584, 591 (App. Div. 2008), the court found that the common knowledge exception applied where a pharmacist filled a prescription with a drug that was not prescribed. In *Palanque v. Lambert-Woolley*, 168 N.J. 398, 400 (N.J. 2001), the court held that the common knowledge exception applied where a doctor misread two pregnancy tests as indicative of an ectopic pregnancy because he carelessly read the laboratory report identification numbers as MIU/ML measurements. Lastly, in *Estate of Chin v. Saint Barnabas Medical Center*, 160 N.J. 454, 460 (N.J. 1999), the court found that the common knowledge exception applied where a gas line was connected to a patient's uterus, rather than a water line, leading the patient to suffer from an air embolism during a diagnostic hysteroscopy. What these cases all have in common is that the nature of the impropriety was so obvious and clearly connected to the harm suffered by the respective plaintiffs that a layperson's common knowledge would be sufficient to glean that a deviation from the standard of care occurred. In contrast, determining whether Plaintiff's alleged damages occurred as a result of negligent medical care requires more than common knowledge. It requires additional knowledge as to the standard of care that a typical podiatrist would apply in the same scenario. Therefore, an AOM is necessary.

*3.     The Substantial Compliance Exception Does Not Apply*

Plaintiff does not satisfy the substantial compliance exception, which requires a fact-sensitive analysis to determine whether "reasonable effectuation of the statute's purpose" has occurred. *Galik v. Clara Maass Med. Ctr.*, 167 N.J. 341, 354 (N.J. 2001) (citation omitted). The New Jersey Supreme Court provides a five-part test to determine whether this exception applies, specifically considering: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim[;] and (5) a reasonable explanation why there was not a strict compliance with the statute." Nuveen, 692 F.3d at 306 (citations omitted). With respect to parts (1), (4), and (5), Plaintiff has not raised any arguments favoring a finding that the substantial compliance exception was met; therefore, the Court will focus on parts (2) and (3). *See generally* Opp'n at 1-2.

The Court finds that Plaintiff fails parts (2) and (3) of the substantial compliance test. First, Plaintiff has not taken a series of steps to comply with the statute. Instead, he has provided three different noncompliant documents: a "personal" AOM, an unsworn and untimely letter from a dermatologist, and a BVA Order finding negligence with respect to only one of Plaintiff's claims and which is signed by an attorney—not a doctor. *See* D.E. 19-2, Exs. A-B; D.E. 16. Plaintiff has failed to serve a compliant AOM despite numerous extensions. *See e.g.*, D.E. 12; D.E. 13; D.E. 15; D.E. 17; *see also Mora v. United States*, 2013 WL 5180041, at *14-15 (D.N.J. Sept. 13, 2013) (concluding that the plaintiff did not take sufficient steps to comply with the statute because the medical documents the plaintiff produced merely stated his medical injuries, condition, treatment and prognosis, but not any statement from an appropriate doctor about the defendant's care, skill, knowledge, practice, or work at issue in the complaint).

Second, Plaintiff has not generally complied with the purpose of the New Jersey AOM statute. The Court disagrees with Plaintiff's contention that Dr. Cohen's letter and the BVA Order are "functionally equivalent" to an AOM. Opp'n at 2. The purpose of the New Jersey AOM statute is "to weed out frivolous claims against licensed professionals early in the litigation process." *Meehan v. Antonellis*, 226 N.J. 216, 228 (N.J. 2016). Notably, "the statute does not call for a physician's statement of Plaintiff's medical diagnosis. Rather, it requires an affirmation that specifically addresses Defendant['s] treatment and whether it 'fell outside acceptable or occupational standards or treatment practices.'" *Mora*, 2013 WL 5180041, at *15 (citing N.J.S.A. 2A:53A-27). Like in *Mora*, the documents Plaintiff has provided do not include a statement from an appropriate doctor about Defendant's care, skill, knowledge, practice, or work that is the subject of the complaint. *See id*. The closest to meeting this standard—and it is a stretch—that Plaintiff comes to this is in Dr. Cohen's unsworn and untimely letter, where, only with respect to Count II, he states, "application of allograft material to the wound was performed with significant deviation from the manufacturer's recommended protocol." See D.E. 19-2, Ex. B. But, even ignoring for a moment that the statement comes from a doctor outside of the appropriate specialty, this statement speaks only to the manufacturer's recommended protocol, but does not affirm whether deviation from a protocol means that treatment necessarily fell outside acceptable or occupational standards or treatment practices used by other doctors in the same specialty. *See Mora*, 2013 WL 5180041, at *15. Consequently, Plaintiff does not satisfy the substantial compliance exception.

4.    *The Extraordinary Circumstances Exception Does Not Apply*

Lastly, Plaintiff presents no extraordinary circumstances to excuse his noncompliance with New Jersey's AOM statute. In fact, he does not even raise this argument. *See generally* Opp'n at 1-2. Courts have "yet to define the full scope of extraordinary circumstances as an equitable

remedy for failure to comply with the [AOM] statute." *Brown v. United States*, 2017 WL 1064665, at*6 (D.N.J. Mar. 21, 2017) (citing *Vitale v. Carrier Clinic, Inc.*, 409 Fed. Appx. 532, 534 (3d Cir. 2010)). However, courts are "wary to find extraordinary circumstances," and have found that even "[a]n attorney's carelessness, lack of circumspection, lack of diligence, or ignorance of the law does not constitute extraordinary circumstances." *Douglas v. SBLM Architects*, 2018 WL 1981479, at *9 (D.N.J. Apr. 26, 2018) (citation and quotation marks omitted); *see also Chamberlain*, 210 F.3d at 162 (emphasizing that the circumstances must be "exceptional and compelling.") (citation and quotation marks omitted).

Plaintiff's *pro se* status is no excuse here because he has received several opportunities to remedy his noncompliance with the New Jersey AOM statute but chose to ignore them all. *See* D.E. 12; D.E. 13; D.E. 15; D.E. 17; *see also Horne v. United States*, 223 F. App'x 154, 156 (3d Cir. 2007) (concluding that the plaintiff's *pro se* status did not excuse his failure to serve an AOM). Plaintiff has given the Court no legitimate reason to find that an extraordinary circumstance excuses his failure to serve a compliant AOM.

## IV. CONCLUSION

For the reasons stated above, Defendant is entitled to summary judgment for Plaintiff's failure to comply with the New Jersey AOM statute and failure to satisfy any exception to noncompliance with that statute. Defendant's motion for summary judgment is GRANTED. An appropriate Order accompanies this Opinion.

Dated: September 26, 2022

_____
Hon. Evelyn Padin, U.S.D.J.